Case number 09-1197, related with 09-2199, Pippo v. Damon-Simon. My name is John Coltsy on behalf of the appellant, Mr. Damon-Simon. Mr. Coltsy, as you can tell, this is a little strange in that we have two cases related. One is the direct, the other is the post-conviction. And the question is how you want to handle it. We're not going to give you two separate oral arguments, but you can certainly combine the two, and we'll give you a little extra time to address the matters that you wish to. But in terms of which you want to go forward on here, it's your call. Certainly ours. I'd like to address the claims in the direct appeal first, and then I'll move on to the post-conviction. All right. Try to keep it around 20 minutes. Absolutely. And you can reserve a portion of that for your rebuttal. Yeah, at this time I'd like to reserve five minutes for rebuttal. All right. Thank you. May it please the Court, I'd like to first present arguments on Mr. Simon's issues raised in his direct appeal. On appeal, Mr. Simon raised four arguments. I would like to address the first issue, that his conviction should be reduced to second-degree murder, and the fourth issue raised in his brief, that the state violated Illinois Supreme Court Rule 412A by failing to timely disclose the state's occurrence witness, Aaron Jackson's, prior criminal history. Addressing the first issue, Your Honors, this Court should reduce Mr. Simon's conviction to second-degree murder because the evidence established that Mr. Simon acted under an actual, albeit unreasonable, belief in self-defense. Okay. Just so it's clear you understand what the standard is when you're asking us to reduce it from the convicted offense to a lesser offense, you're saying that it's a matter of law that under these facts, he could only be convicted of the lesser offense. Yes, Your Honor. Viewing the light and most favorable to the state, no rational trier of fact could have not found that the state, that the defense established prior. And yet that's exactly what happened here. What do you rely on to explain what happened below? Initially, Your Honors, there's two violent interactions that was testified to by Mr. Simon and corroborated by the state's own occurrence witnesses. Two days prior to the shooting that occurred, Mr. Hill and associates approached Mr. Simon, held him down, and Mr. Hill pistol-whipped Mr. Simon in the face. Well, you're making that charge as if it's a fact. That's certainly his testimony and maybe the testimony of others, but we don't have the benefit of facts finding the fact by the trier of fact, and it seems clear that if it wasn't disregarded, it was certainly discounted by the trial judge. To the extent, initially there was no testimony to rebut that. There's no denial that this affected it. You're not suggesting that it was binding on the trier of fact, are you? There was no evidence to suggest that this occurrence didn't occur, and while the trial court specifically did not state that it disbelieved or believed this testimony, it was unrebutted testimony before the trial court. All right. Didn't the judge – first of all, this testimony came in via the defendant. Correct. There was some objection to it coming in through other witnesses, but the court didn't hear it. That is correct. And the court heard about the robbery. The prior robbery two years before. All right. There's a question of whether or not the shooting actually came in. Didn't the judge, when he said that the response to the shooting on this day was not warranted, didn't he say that shooting him under the circumstances, all the circumstances present, was not less than murder? The judge didn't make that ultimate finding. So didn't he then consider everything? I mean, how can we say he didn't consider and reject that this was not – he didn't have the right to defend, and didn't he also reject the unreasonable belief in the use of self-defense? He did ultimately, in his finding, reject that. And the standard here is whether or not that was any rational trier of fact. Based on those facts, make that finding. All right. So we're not contesting X. That is kind of a hard – it's a hurdle, quite a hurdle. It is quite a hurdle. Really, what it says that assuming that pistol whipping occurred two days before, it didn't lead to an unreasonable belief that his life was in jeopardy on the day the shooting occurred. And that's what appears to be the trial judge's findings. That he could have left the scene, or he could have – at the time, there was testimony that the victim's hands were on the handlebar of the bike that he approached with, so that it suggests that there was simply nothing there to suggest that what had occurred two days prior was going to occur this time around as well. I mean, there was additional evidence, as noted in the briefs, that five minutes prior to the shooting, Mr. Hill approached with a weapon displayed from his back and then threatened to kill Mr. Simon, which caused him to flee. And every step of the way from Mr. – But he didn't flee this time. He didn't flee, ultimately, the last time, because he believed that Mr. Hill was going to carry through on his threat to kill him. The issue – Well, you would think that if he really believed that, that would give him more reason to flee rather than less reason to flee. That is one inference that could be drawn. However, Mr. Simon – Is that a reasonable inference, though? If it's reasonable, how can we say that the trial judge was irrational? Simply because of the situation Mr. Simon was put in. He was in a car where he wasn't driving. He was the passenger. This person had previously threatened him while displaying a gun. Well, that doesn't help. The fact that the defendant was in a car and the victim is on a bicycle doesn't really help as far as this notion of – Mr. Simon did testify that he felt – I mean, he wasn't the driver. He felt as if he had nowhere to go and that he was trapped. What about the absence of the gun? Doesn't that support the trial court's finding? The absence of the gun ultimately is what brings this case into the ambit of unreasonable belief in self-defense. But remember, we have to say that the findings of that were irrational, basically, or that no reasonable finder of fact. Now, what about the Suleiman? I mean, I know you say he, the trial judge, incorrectly recalled the testimony, but when he finally summed it up, didn't he sort of correct that notion that Suleiman didn't see the whole thing, he heard the shots, but before the incident and after, he did not observe a gun in the victims? The trial court's comments on Mohamed Suleiman's testimony are important here because it shows what he was looking at. He specifically stated Mohamed Suleiman's testimony shows that this occurrence, the shooting, occurred because Mr. Simon wanted it to happen, not because of any self-defense situation. So we know Mohamed Suleiman's testimony, that he said he initially saw Mr. Hill from 30 feet away approaching on his bike, and that he saw his hands on his hand. He also testified he had no reason to look for a gun, could not tell if he actually was armed. But regarding the gun, and here's the difficult part for me, because as I said, you're asking us to rule as a matter of law unreasonable self-defense applies, and to say that unreasonable self-defense applies against a finding by the trier effect causes me a great deal of concern because in the absence of a weapon, as a society, do we really want to say that as a matter of law the absence of a weapon makes it out entirely of the claim of self-defense, unreasonable or not? The absence of a weapon, additionally, there's case law cited in both the defense brief, Hawkins and Collins, where the eventual victim was unarmed, and there was no gun. In Collins, it's the defendant who decided to introduce a gun into a situation where there wasn't one, and there the courts both found second-degree murder an appropriate finding of the appellate court. And here it's important to note that on a second-degree finding, it's not the actual apparel that the defendant has placed there. It's what he believes. It's what he believes. And I agree with you. I agree that's the law and that there doesn't have to be an indication that he in fact had a gun. But what you have in this case is basically kind of two sides of the story, and you have witnesses that corroborate that he really wasn't trying to, you know, that no one observed him reach for his back pocket. No one really observed him doing anything that would warrant the retaliation. And then you have the other side where the defendant, you know, said this guy had already, you know, accosted me that day. I believed he had a gun. I saw him going for the back of his pocket, and I shot him. So what about the bullets? Aren't there bullets in the back of this man, though? There was an indication of four wounds to the man, one to the chest and three to the back. So in terms of how it wasn't necessarily clarified how Mr. Simon shot Mr. Hill. But the defendant did say he didn't shoot him in the back, didn't he? He said, I know I didn't shoot him in the back the first time. Oh, okay. He didn't know after he fell. And it's important to note here that while other witnesses, Antrell Claiborne, Anthony Jackson, Aaron Jackson, and Muhammad Soyman testified, they had no reason to believe that Mr. Hill had a gun or acted in a way to prove a gun. They weren't the ones threatened by him previously, had a previous violent reaction. Notably, Anthony Green, who had witnessed each of these incidences, himself testified, I feared I was going to get shot that day, that I couldn't be shot by someone and killed. And so that gives us a strong window into the mind of Damon Simon. If another state's own witness also likewise believes, based on the reinitiation of contact, it's important here that Simon fled. He left the scene. He tried to get away. He told people that there was someone with a gun trying to kill him. Please take me away from here. Other state's witnesses testified that he looked scared and was acting consistent with being frightened. All those things are windows into how Mr. Simon perceived this threat of Mr. Hill reinitiating contact with him. And so it's really within that rubric that we have to view a second degree murder finding. And Mr. Green's testimony, consistent with Mr. Hill's belief that I could be shot, I'm going to be shot, he's going to follow through on the threat to kill me, is important testimony. Your Honor, addressing the fourth issue raised in Mr. Simon's record to you, the record here establishes that the state violated Illinois Supreme Court Rule 412A by failing to disclose a current witness, Aaron Jackson's, prior convictions in a timely manner. Now, let me go right to the heart of this. Yes. We don't have anything in the record that really tells us that this witness ever had any convictions. What do we do with that? We have in the record, first, Simon's defense counsel's representation that the state tendered him the morning of trial, the morning before Aaron Jackson testified, a disposition of guilty of a lawful use of a weapon by a felon. We have that representation. That's also made in conjunction with the state's admission that it still needed to look into whether or not he had a felony conviction. And it's distinguishment to say that as of now, it's our assertion that he does not have an adult felony conviction. That further supports the inference that this in the paper, the indication that defense counsel had a juvenile adjudication for a lawful use of a weapon by a felon. Well, there's a problem with that, and I'll explain it to you. But didn't the state say those are arrests? The state specifically said those are also juvenile arrests. All right. Didn't they say those are arrests? They indicated that they might have been involved for juvenile arrests. And I think that statement is contradicted by their previous statement. All right. Well, here's my concern. Now, this fellow was about 18 or 19 when he testified. He was 19, yes. He was 18 or 19, correct. Okay. Now, and these were apparently juvenile arrests? Well, based on defense counsel's statements to the court, it was an adjudication of guilty on a lawful. Can a juvenile even have a charge of unlawful use of weapon by a felon? Can a juvenile even be classified as a felon? That's my question. I haven't got it. Doesn't he have to have a felony conviction in order to have a UUW by a felon? Yes. And then that was a point specifically raised in the brief. However, there are numerous types of crimes. Can a juvenile be a felon? Specifically, a juvenile cannot be a felon under definition. How does that charge apply to this individual who was certainly a juvenile? Because he previously could have been convicted of a felony. When? When he was a juvenile. If he commits a crime as a juvenile that the state either automatic transfer or elects to transfer into a felony conviction, he could have a previous felony and then be charged with this. And similarly, this case could have been transferred. And those are the things that here. Right. And, see, that's the problem. How are we supposed to, you know, review this when we don't really know any of this information? Does this segue into your PC? I mean, these are issues that are also contained in the PC. If the PC goes outside the record, certainly something more could have been presented.  As you know, the PC here was filed under unique circumstances. Mr. Simon intended it to be a motion for new trial, but that filing was filed too late. Initially, returning to the issue of the- Was he asked whether or not he wanted to withdraw it or he wanted to proceed as a PC? Because that's certainly his prerogative. He was not asked. The court simply dismissed it at that time, saying the claims are invalid. Who characterized it as a PC then? He initially characterized it as a PC and asked it to be re-characterized as a motion for new trial. Returning to the- I mean, the reason we don't have specifically the underpinnings of this juvenile adjudication for unlawful guilty of a weapon is that the state failed to disclose it in a timely manner. Let's go to the heart of even accepting that there was a conviction. Would it have made any real difference in this case, given everybody who's involved? It certainly would have made a difference in this case, because Aaron Jackson initially is the state's witness here. He's the first witness to testify for the state. He testifies that Mr. Simon withdrew a gun from his waistband as opposed to getting it transferred to him by Mr. Claiborne. Additionally, he's one of the more independent witnesses in this case. He wasn't involved prior in the interactions like Mr. Green and investigated by police. He wasn't like Angela Claiborne who drove away with the murder weapon and was with Mr. Simon previously. One more witness. How about Mr. Suleman? Mr. Suleman testified specifically that he didn't see the shooting, that he only saw him riding and had no particular intention to pay attention. And so certainly nothing about- Did he see the end and did he hear the shooting? Mr. Suleman said he turned around and saw Mr. Simon fleeing after the shooting. And that Mr. Hill was on the ground. He never saw any of the shots fired or any interactions between the two other than Mr. Hill riding into the parking lot. All right, but he did add that he didn't see him with a gun either before or after the shots. Correct. He did say that and he clarified that he had no reason- he did not know if he didn't have a gun. And he had no indication that he would have one as Mr. Hill or Mr. Green- or excuse me, Mr. Simon previously did. Now, would it have been possible to supplement the record with this information about this juvenile record? This court could have taken judicial notice of a juvenile record from Mr. Aaron Jackson. We could not locate his birth date and the name Aaron Jackson, unfortunately, is a very common name. And do you think that might explain the document the state had in its possession? Clearly, if that is a possible inference. However, would the state turn over a document that was only an arrest that it believed was not the person here? And I think the important thing here is the state's intention that- Well, because the extent that that document is in the record, there's a birth date on that document, isn't there? The document that the defense counsel had could have been placed into the record had there been a birth date on that record, depending on if you presented that in the motion. Was this raised- we have four criminal cases up this morning, and I don't have a specific recollection of every single issue as to whether it was specifically preserved. Was this preserved in the motion for a new trial, or was this one of the basis of a- This issue was not preserved in the motion for a new trial. So it does have to be reviewed under plain error. Or based on trial counsel's ineffectiveness for failing to take it upon himself to investigate the circumstances surrounding these cases. You'll need to wrap up, and then you'll have time for rebuttal. Just regarding the post-conviction petition, as you mentioned, this wasn't preserved in the post-trial motion. Mr. Simon made a claim that his trial attorney demanded additional funds from him to locate transcripts and then file the cursory motion to dismiss. And we see that the motion for a new trial. And the motion for a new trial is in fact cursory. It didn't include any of the lynch evidence claims. And so on that basis, we would ask this court to review it. Where the standard is low, there's a gist standard where you just have to raise an arguable basis of prejudice and arguable basis of an effective assistance counsel. We'd ask that this court remand his petition to second session. All right. Thank you very much. Thank you. Good morning, may it please the court. My name is Peter Fisher. I'm an assistant state's attorney on behalf of the people. With regard to the issue of whether or not the trial court properly found the defendant guilty of first-degree murder, Your Honors correctly stated the standard. Of course, it is a high burden, and the defense cannot meet it here. How do you distinguish Collins and Hawkins? It certainly happens on occasion that the court of review reduces the offense from first-degree murder to a second-degree murder. I agree it happens, and it happens on a fact basis. On occasion. On a case-by-case basis, on occasion, and this is not an occasion where it is. Why isn't this a case? Well, we have four eyewitnesses, Mr. Jackson, Green, Zillerman, and Claiborne. None of those four eyewitnesses ever see this victim with a gun. They see an unarmed man shot three times in the back and one time in the lateral left chest, which is the side, really, not the front. It's the side. So this victim was shot. He's an unarmed man, shot four times in the back or side. No one sees a gun before the incident. No one sees a gun during the incident, except the defendant. We'll get there. No one sees a gun after the incident. So there is no reason. You also suggest that Collins and Hawkins stands for the proposition that no gun is needed on the part of the victim. Absolutely. If the defendant were to get on the stand and credibly testify, I thought the man had a gun, there could be a finding of second-degree murder. Interestingly, you're reminded of the old Shakespeare, he doth protest too much argument. This defendant got on the stand and did a whale of a job of embellishing what happened in this case. He took a case where, if you read the record, you're kind of expecting him to say, I got out of the car and I thought he was reaching for his back pocket. No, he has this victim stand there almost in a military position, I'm going to kill you, and pull his gun out that no one else sees. And it's significant, most significant, that Anthony Green doesn't even see that. Remember, Anthony Green is the man who flips on the stand. But even in flipping, he doesn't put a gun in the victim's hands. He goes, I don't know, I blacked out, something could have happened. And he gave this hokey story. But there was testimony that just an hour or two before this, he had seen, was it that close in time? It was. He had seen this fellow and he saw him, did he say he had a gun at that point or he was just saying he was going to get him, he was going to get him? The witnesses said that this victim, the victim had a gun in his back pocket and that he threatened and that there is, I will agree, there is evidence of a pistol whipping several days earlier. And there's the other evidence before about the incident where he was robbed and shot. He wasn't shot. Shot, oh, but he was robbed. He was robbed. With a gun. There was a gun, well, there was a robbery earlier, a couple of years earlier, the defense counsel misstated something and then we played a whole issue on it. So really he was making all this up and that the whole thing even the five minutes before was kind of like in his mind and that he had no reason to kill the guy. I mean, right? No, I'm not saying that. I'm saying there was evidence in the record that the judge said was not relevant enough to what happened in that parking lot. Those are other incidents. There's evidence in the record of those other incidents. But it was limited to only hearing it from the defendant's mouth. Unfortunately, I have to admit that the other witnesses did say that there were prior incidents. Yeah, that didn't come in, right? It did come in. It did? Yes, it did. I thought it didn't come in. No, it all came in. Well, isn't that one of the complaints that it didn't come in? No, they wanted additional evidence that it came. Who else did it come in through then? The thing that happened just minutes before. No, Green testified that there had been a prior incident. Okay. And Green said that there had been a prior incident of pistol whipping and on the street as well that there had been a prior incident. So I have to concede that that was in the record. Yeah. They wanted additional evidence of that. And the additional evidence that they wanted of that was blatant hearsay and not permissible under Lynch. Okay. It would have been cumulative in any event, but it was not admissible. The evidence they wanted was a man to say it was said he shot somebody or they said he shot somebody. So the judge heard all this evidence. He was completely aware of all this evidence. And in spite of that evidence, he looked at what happened at that scene in that convenience store parking lot when the defendant gets out of the car. He was in a car. He gets out of the car, pushes two people away from the car so he can get a better to get at this guy, and pulls out a gun and shoots him in the back three times and in the side once. He says he shot him for sure. He didn't shoot him in the back the first shot. I'm sure. He did say that, didn't he? He says, I didn't shoot him in the back. I did not shoot him in the back. I don't know how he got shot in the back. He pulled a gun on me. He threatened to kill me. He sees a scene that no one else sees. And this isn't just, you know, what may have happened. He's making this up. He's blatantly lying. The judge found that he was blatantly lying. And, again, I said it was significant that Green didn't even, the flipper didn't even put that scene in there. So the evidence was. When you say the judge found him to be not credible or lying, did he actually make those findings? Yes. So once those findings are made, then in order to reverse, to reduce, to second degree, we would have to rely only on the evidence that was considered by the trial judge. I mean, only the other evidence and not the defendant's evidence, because we have to give deference to the trier of fact, and the trier of fact said that the defendant was not credible. Absolutely. Absolutely. And you'd have to do that even if he didn't make that finding under the standard of review, taking the light most favorable to the prosecution. So even if he didn't make a specific finding that he didn't believe the defendant. Well, a specific finding is almost insurmountable, isn't it? Well, we would hope so. What about the juvenile adjudications or this suggestion that he had a felony conviction? Isn't the state obligated to tender the background of witnesses before? Yes, we are. And there's no evidence that we didn't. Well, isn't there a statement on the record that the assistant said, we're still checking on this one, Judge? No. What is that about? Here's what happened. There's recross examination by defense counsel. And Jackson, Aaron Jackson, who we don't know, he's 18 or 19 years old. We don't know his exact birthday. So even if we wanted to run a rap sheet at this point and supplement the record, this isn't in the record. There is no rap sheet in the record. I know there's nothing in the record. So he's 18 or 19 years old. And so if he had an adult background, there was a minimal amount of time that he could have had one. In any event, the defense. Well, that's not necessarily true. He could have had some sort of a conviction as a juvenile. But there could have been some case where it was transferred. True? That's all true, but it's all speculation. Okay. Your Honors, what happened is that the defense counsel asked Jackson if he had any prior felony convictions, and he says, no, I don't. At this point, the prosecutor objects and says, we've spoken about this, the defense attorney and I, and we've agreed to look into whether or not he had an adult felony background. We said we don't think he has one. Counsel didn't deny there was such an agreement. Well, wait a minute. Okay. Let me stop you there, Mr. Fisher. Before trial, it's a pretty standard operating procedure to ask both sides, does anybody have any convictions for purposes of impeachment? So this is something that does not get done on the day of trial. We're looking into it. So isn't there an obligation under the discovery rules to tender any convictions that a witness has? Assuming he has convictions, yes, there is. There was a rap sheet tendered. It's clear that the defense attorney has a piece of paper in his hand that he thinks relates to this background. It says he has a UUW by a felon. Yeah, well, he says, the defense counsel says, I have a rap sheet tendered by the prosecution that show a disposition, which means the prosecution clearly looked into this man's background, that show a disposition, which you wouldn't say normally for, that's what you usually use for opposed to a conviction, disposition on a UUW by felon. At this point, the prosecutor responds without contradiction from the defense attorney that those are juvenile arrests on that sheet. Arrests. Arrests. And that's it. That's all we know on the record. So yes, I agree, the prosecution has a duty to turn something over. But in order to find the prosecution in dereliction of that duty, there has to be something out there. But the assistant state attorney, I thought it was a woman, said we're looking into it. Yes, she said that. All right. But, again. It doesn't appear that it was finished. Yes, and the defense counsel never says another word of it. He doesn't bring it up again. There was an agreement to look into it. Presumably, if there was something else, they would have followed up on it. It wasn't followed up on. Furthermore, let's throw this witness out. Let's say. Well, you did suggest that in your brief, didn't you, or who? I did suggest. Let's say the witness never testified. Yes, let's throw it out, and then what do we have left? And you still have. Now, and it also wasn't in the motion for a new trial. This is not something subject to plain error. The plain error under Thompson and under Glasper has been restricted to structural error only now. Is that your position that the Supreme Court has definitively said that from now on the plain error rule. The second prong. The second prong is structural error only. Absolutely. That's what Glasper and Thompson say. And, therefore, you can't get there in this case. The other thing to note is that this issue regarding the rap sheet is not part of the PC appeal. The PC appeal relates only to ineffective assistance of counsel for failure to get the transcripts for the purpose of post-trial motion and also to the issue of whether or not they should have argued second degree. So this is not something that's been argued. So it's been waived for purposes of appeal on the PC portion. And, no, you can't supplement the record now with his rap sheet because it's really not. I was asking if he could have supplemented the record originally in the direct appeal. I don't think so. It wasn't part of what was in the record. The rap sheet or whatever was handed to counsel is not part of the record. As you know, discovery routinely is not part of the record. So we don't know specifically what was tendered in this case or not. No, but we can infer it was a rap sheet. There was a rap sheet. And, again, from the absence of anything in this record, we have to say the defense hasn't met its burden on this issue. With regard to the post-conviction issues, this defense attorney claimed or on post-conviction the defendant claims that his defense attorney was ineffective because he promised or he said, I don't have the transcripts and I need more money to get the transcripts. A couple problems with that, first of all, he quotes from the transcripts during the motion for new trial. Several times he makes quotes. So clearly he had transcripts of the witness's testimony. Second, it sort of begs the issue and dovetails back into the direct appeal itself because the purpose of post-trial motion is really to preserve issues for appeal. There was nothing, unless this court were to decide on the direct appeal, that something is waived and not subject to plain error. He's not out anything. He raised everything. The defense attorney on appeal had the record. The defense attorney on appeal has been fully able to argue all the issues and it would only be relevant if this court were to find that an issue was waived and plain error didn't apply. Of course, we've argued in our brief that there were no errors at all in this case and, therefore, there's nothing to have been preserved to begin with. For the reasons we've stated today and in our brief, we'd ask that you affirm the conviction and also affirm the dismissal of the post-conviction. All right. Thank you very much. Thank you. I just have three quick points on rebuttal. Initially, regarding the second-degree murder issue, here the state evidence did come in from state's witnesses corroborating each of the prior violent interactions. Mr. Simon's attempt to flee and his frightened state at that time, before Mr. Hill re-entered the parking lot. Secondly, regarding the four-time- Let's go back to that one. Why doesn't Mr. Simon's testimony and the prior facts rejection of it take this case out of Collins and Hawkins where credence was given to the circumstances surrounding the shooting? Because here the circumstances initially are known by testimony from witnesses who corroborate David Simon's state of mind at that time. Once the defendant takes the stand and says, gives a version that is totally at odds with everyone else's, you know that has an impact on the prior fact determination as to whether second-degree applies. Certainly, the way that the court dismisses his testimony, saying that I don't believe he actually threatened him with a gun, shows that his belief in the circumstances, his perceptions, his reactions to Mr. Hill are, in fact, unreasonable, that he believed that he was going to kill him, that he believed he took these actions. Essentially, the state is arguing because his testimony doesn't establish a perfect self-defense, it can't prove second-degree. It can't simply be a question of a belief being unreasonable because there's no question that the defendant's belief was unreasonable, but it has to be unreasonable in the context that if the circumstances were as he believed them to be and there's something in the evidence that would lead him to believe that. If there's nothing in the evidence that would lead him to believe that his life was really in jeopardy, then he's out of luck. I mean, we have a threat five minutes prior that he was going to kill him while displaying a gun. We have fleeing. We have telling people, independent witnesses who corroborate, saying, I need to get away from this person. And then once again, we have Anthony Green testifying, who has witnessed these same incidents, saying, I feared I was going to be killed by this person, showing that he has an unreasonable belief as well based on the interactions, regardless of whether or not Mr. Simon's testimony is true. Isn't that the Finder-Fax job, though? He rejected second-degree murder. The state said this isn't self-defense, it's not second-degree, it's first-degree murder. I mean, isn't that what the Finder-Fax is then supposed to decide after they hear all these people testify? It is what the Finder-Fax is supposed to decide. It's an argument that the Finder-Fax did that irrationally here. And further, the trial court's statements in post-trial motions, when arguing the post-trial motion and denying the post-trial motion, indicate that his ideas of Muhammad Suleyman's testimony were not clear. He specifically stated that Muhammad Suleyman saw the entire incident, but for when he hustled people to the back of the store as gunshots were heard. So Mr. Suleyman did not see the entire incident, but for hustling people back. He saw Mr. Hill approach and then turned around for 10 seconds, then heard gunshots, and then hustled people to the back of the store. So it's clear here that Muhammad Suleyman's testimony is not definitive to this answer. One quick point regarding Aaron Jackson's testimony. Yeah, before you get to that, on Claiborne, didn't the defendant tell Claiborne that the victim had to get it? He did make that statement to Angela Claiborne. What is the impact of that statement? The impact of that statement in Collins' and Hawkins' statements after a shooting or incident like this were discussed, and it shows more of his belief that he had to take the action that he did. And Hawkins has specifically said that statements like this do not preclude a finding of second degree murder. That didn't mean he had to kill him no matter what. Riding on a bicycle, doesn't have a gun, he's going to kill him no matter what. Wherever he sees him, he's going to kill him. I mean, the inferences is based on his perception and Mr. Green's perception was that he had to do it because he thought he was going to be killed by this person who had threatened him with a gun five minutes prior, who he had fled and then decided to reinitiate contact with. Yeah, but can't the trial judge take that statement and make a reasonable inference that he had a gun, he had an intent to kill him, he was going to kill him no matter what, he caught him on a bicycle and he killed him that way. Therefore, it's not second degree murder. Can a trial court do that? In the absence of the corroborating testimony of the violent interactions, of the threatening with a gun, of fleeing and reinitiation, that inference is not a rational inference. It does not dispose of the issue. It might be a consideration, but it doesn't dispose of the issue of second degree murder. Finally, one quick point on Aaron Jackson's testimony. What about Mr. Fisher's comment that the defendant decided to whatever? His version was a little bit more, shall we say, than everybody else. And the way that he testified, that the judge is listening to this and basically making a determination, well, I really can't believe this guy because all these other, at least everyone else that's out there, doesn't see a gun at all. And there's no gun recovery. Doesn't he kind of lose, when you lose that credibility, isn't there a problem there? I would agree with his court that Mr. Simon's testimony about the court discarding it lost credibility with the court concerning the actual peril he was in. The actual peril.  Not what he believed was going to happen. Not necessarily how the- But can't the court reject what the defendant says he believed because it can't accept or doesn't accept the testimony that's in front of the finder of fact? Initially, regarding, I mean, the court's indications and comments based on Muhammad Salman's testimony- No, no, I'm talking about the defendant. When you lose all credibility, isn't there a risk there that the court or any finder of fact, a jury or a judge, is going to say, you know what? I don't think he was really reasonably even thinking this. So isn't that what happened here? Let me try to put it a little differently. He claims a reasonable basis for firing the gun even though it's an unreasonable belief. But his reasonable basis is based on a version that no one else saw. He claims he was reasonable because the individual that was out to kill him was pulling a gun or was about to pull a gun or maybe even extended his arm to kill him and nobody else saw it. So to the extent that those facts are not, they are not facts, you know, the trier of fact doesn't find, he cannot have an unreasonable belief under the circumstances because those circumstances do not exist. In this case, there's a reason for Mr. Simon to believe his testimony, to interpret the actions or believe that he saw the actions in the way he did based on the prior interaction, the reinitiation of contact. Finally, addressing the significance of Aaron Jackson's testimony here, the defense, based on the trial or the State's failure to disclose, lost the opportunity to investigate any potential problems in Aaron Jackson's testimony regarding whether the State had influence or whether he had bias in testimony. And when we're considering, but you concede that this case doesn't turn on his testimony or that we could eject it all and still come up with sufficient evidence? Not where Mr. Simon has corroborating evidence from the State's own witnesses supporting his views and not where each individual witness who testifies here is important to the State's determination. All right. Thank you. Thank you. Case will be taken under advisement.